UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BECKY K. G., | ) |
|         *Plaintiff* | ) ) ) ) |
| v. | )    No. 1:20-cv-00089-GZS ) |
| ANDREW M. SAUL, *Commissioner of Social Security,* | ) ) ) ) |
|         *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing her past relevant work as an administrative assistant for the period between June 6, 2015, and September 21, 2016.  The plaintiff seeks reversal and remand on the basis that the ALJ's RFC assessment for the period prior to September 22, 2016, is not supported by substantial evidence.  *See generally* [Plaintiff's] Statement of Specific Errors ("Statement of Errors") (ECF No. 9).  I discern no error and, accordingly, recommend that the court affirm the commissioner's decision.

On April 16, 2019, the ALJ issued a partially favorable decision finding the plaintiff disabled as of September 22, 2016, but not before then.  *See* Finding 13, Record at 24.  With regard to the period from June 6, 2015, the alleged onset date, and September 21, 2016, the ALJ found,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and obesity, Finding 3, Record at 14; that she had the residual functional capacity (RFC) to perform light work, except that she could have lifted and carried no more than 20 pounds occasionally and 10 pounds frequently, stood, walked, and/or sat for six hours in an eight-hour day, occasionally climbed ladders, ropes, scaffolds, ramps, and stairs, frequently balanced, and occasionally stooped, kneeled, crouched, and crawled, but that she needed to avoid concentrated exposure to extreme cold and heat, vibration, vibrating tools, sloped and irregular surfaces, and unprotected heights, and needed the opportunity to change positions from a sitting to a standing position every 20 minutes for up to five minutes to relieve her back pain symptoms, but would remain on task, Finding 5, *id*. at 17; that she was capable of performing her past relevant work as an administrative assistant, Finding 7, *id*. at 22; and that she, therefore, had not been disabled from June 6, 2015, her alleged onset date of disability, through September 21, 2016, Finding 13, *id*. at 24.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 82-62, 1982 WL 31386, at *4 (Jan. 1, 1982).

## I. Discussion

The primary issue in this case is whether the ALJ's assessment of the plaintiff's RFC for the period between June 6, 2015, and September 21, 2016, is supported by substantial evidence. This issue turns largely on the ALJ's reliance on the opinions of two agency nonexamining consultants, Benjamin Weinberg, M.D., and Donald Trumbull, M.D., who provided the only expert RFC opinions of record. *See* Record at 20, 75-85, 99-110.

Dr. Weinberg reviewed the plaintiff's disability claims at the initial level in September 2017, and Dr. Trumbull on reconsideration in December 2017. *See id.* at 75-85, 99-110. Both concluded that the plaintiff's degenerative disc disease was a severe impairment and assessed several exertional, postural, and environmental limitations, including that the plaintiff would need to be able to take "hourly breaks from stand to sit of 3-5 minutes to relieve symptoms[] and decrease axial loading[.]"[2] *Id.* at 82, 106. When assessing the plaintiff's RFC, Drs. Weinberg and Trumbull deemed the plaintiff's statements regarding her symptoms only partially consistent with the evidence of record. *See id.* at 81, 105. Dr. Trumbull noted that the plaintiff's medical records clearly supported "some spinal limitations" but that her level of functioning appeared "not fully" consistent with her "symptomatology." *Id.* at 105.

---

[2] Dr. Trumbull also determined that the plaintiff's obesity constituted a severe impairment. *See* Record at 103.

In determining the plaintiff's RFC, the ALJ found Drs. Weinberg's and Trumbull's opinions "the most persuasive" and indicated that her assessment of the plaintiff's RFC for the period between June 6, 2015, and September 21, 2016, was supported by their opinions. *Id.* at 20. And indeed, for that period, the ALJ assessed an RFC that largely tracks the Weinberg and Trumbull opinions, *compare* Finding 5, *id*. at 17 *with id*. at 81-83, 106-07, and, like them, found the plaintiff's subjective complaints not fully consistent with the evidence, *compare id.* at 18 with *id*. at 81, 105. The ALJ did deviate somewhat from Drs. Weinberg's and Trumbull's conclusions that the plaintiff would need only hourly breaks to alternate positions, finding that she would need to be able to alternate from a sitting to standing position every 20 minutes for up to five minutes to relieve back pain but would remain on task while doing so. *Compare* Finding 5, *id.* at 17 *with id*. at 82, 106. In so departing, the ALJ appeared to partially credit the plaintiff's statements regarding her need to change positions regularly. *See id.* at 17 ("In terms of limitations, the [plaintiff] indicated having trouble sitting for long periods and needing to stand up from a sitting position."); *see also id.* at 60 (the plaintiff's testimony regarding her need to alternate positions).

At the administrative hearing, the vocational expert (VE) testified that a person with the RFC formulated by the ALJ for the period between June 6, 2015, and September 21, 2016, could perform the plaintiff's past relevant work as an administrative assistant. *See id.* at 68-69. Based on the VE's testimony, the ALJ found that the plaintiff was not disabled during that period. *See* Findings 7, 13, *id.* at 22, 24.

In assessing the plaintiff's RFC for the period beginning September 22, 2016 – the date the plaintiff underwent her first back surgery – the ALJ again found her capable of performing light work with limitations consistent with the opinions of Drs. Weinberg and Trumbull, but also found that she had the "additional limitation of being off-task for up to five minutes every 20 minutes"

4

and would need to have "the option to walk away from her workstation." Finding 6, *id.* at 20. The ALJ explained that the plaintiff's "date of surgery and the subsequent pain deficits after her procedure support[ed] the additional limitations posed in the" RFC. *Id.* at 20. Crediting the plaintiff's subjective complaints after the September 22, 2016, surgery, and a second surgery on May 5, 2017, the ALJ further explained, "The intensity and persistence of the [plaintiff] pain symptoms, subsequent to her surgeries, support the notion that she would be unable to remain on task during a normal workday and workweek because of her need to leave her workstation to alleviate her symptoms." *Id.* at 20-21.

The VE testified that such off-task behavior would preclude all work. *See id.* at 69-70. Based on the VE's testimony, the ALJ determined that the plaintiff became disabled on September 22, 2016, and continued to be disabled through the date of the decision, April 16, 2019. *See* Finding 13, *id.* at 24.

### A. The ALJ's Reliance on the Opinions of Drs. Weinberg and Trumbull

The plaintiff argues that "the RFC formulated by the ALJ for the period prior to September 22, 2016, and the bases cited to support the limitations are not supported by substantial evidence." Statement of Errors at 2. She contends that the ALJ erred in relying on the opinions of Drs. Weinberg and Trumbull because (i) their opinions were "current evaluations only[,]" (ii) neither consultant discussed evidence predating an August 4, 2017, examination by the plaintiff's treating neurosurgeon, and (iii) the record contains significant medical evidence postdating their opinions that they did not see. *Id.* at 10-12.

"This court has noted that there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC, although factors to be considered include the completeness of the consultant's review of the full record and

whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the [ALJ]." *LaFlamme v. Colvin*, Civil No. 1:14-cv-57-DBH, 2015 WL 519422, at \*8 (D. Me. Feb. 6, 2015) (alterations, citations, and internal quotation marks omitted).

The plaintiff first complains that Drs. Weinberg's and Trumbull's opinions, dated September 15, 2017, and December 22, 2017, respectively, "were current evaluations only" and, therefore, did not fully address the period dating back to her alleged onset date of June 6, 2015. Statement of Errors at 10. Although the plaintiff is correct that Drs. Weinberg and Trumbull both indicated that their RFC assessments were "Current Evaluation[s,]" Record at 81, 105, this court has previously explained that this nomenclature does not mean that the nonexamining consultant only assessed a claimant's condition at the time the opinion was rendered, *see Skidgel v. Colvin*, No. 1:14-cv-181-JHR, 2015 WL 1720523, at \*4-5 (D. Me. Apr. 14, 2015) (rejecting a claimant's argument that the ALJ erred in relying on a "Current Assessment" by an agency nonexamining consultant because it postdated the claimant's alleged onset date by 20 months).

In point of fact, Social Security Administration Program Operations Manual System (POMS) § DI 24510.050, pertaining to the "Completion of the Physical RFC Assessment Form[,]" instructs medical evaluators to "[u]se the 'Current Evaluation' block in cases when the evaluation is for AOD [alleged onset date] through present and the duration requirement has been met." POMS § DI 24510.050(C)(f). Drs. Weinberg and Trumbull did just that. Both of their assessments noted the plaintiff's alleged onset date. *See* Record at 76-77, 100. Dr. Weinberg summarized medical treatment records dating all the way back to January 2014. *See id.* at 77-78. And, Dr. Trumbull explained that he considered, among other things, the plaintiff's "[l]ongitudinal

treatment records" when evaluating the consistency of her symptoms with the evidence on file. *Id.* at 105.

The plaintiff also contends that Drs. Weinberg and Trumbull failed to adequately explain their reliance on a neurosurgical examination from August 2017. *See* Statement of Errors at 10-11. Contrary to the plaintiff's argument, Drs. Weinberg and Trumbull did explain why they thought the examination was significant; both noted that the "treating neurosurgeon exam of 8/4/17 showed normal BLE strength, decrease in left foot sensorium, antalgic gait, no SCC, recommended TENS, massage therapy, acupuncture, chiropractor, and *listed no limitations*." Record at 81, 105 (emphasis added).

In further attempting to undermine the ALJ's reliance on Drs. Weinberg's and Trumbull's opinions, the plaintiff contends that the record contains significant medical evidence that they did not review. *See* Statement of Errors at 11. She points to certain treatment records from the period between December 2017 and January 2019 but fails to explain how reviewing these treatment records would have necessarily changed Drs. Weinberg's and Trumbull's opinions with regard to the timeframe at issue: June 6, 2015, to September 21, 2016. *See id.* at 11-12; *O'Bannon v. Colvin*, Civil No. 1:13-cv-207-DBH, 2014 WL 1767128, at *7 (D. Me. Apr. 29, 2014) (holding that a claimant must demonstrate why evidence unseen by medical experts "would necessarily have altered their opinions in a manner favorable to the [claimant]" in order to obtain a remand on that basis). This lack of explanation is particularly problematic given that the records she cites all postdate the relevant time period by more than one year.[3]

---

[3] The plaintiff's unseen evidence argument is not saved by the ALJ's finding that Drs. Weinberg and Trumbull "did not have the opportunity to review the entire longitudinal medical record that reflect[ed] the [plaintiff]'s ongoing pain symptoms[.]" Record at 20. First, the plaintiff does not argue that this finding undermines the ALJ's reliance on Drs. Weinberg's and Trumbull's opinions. *See generally* Statement of Errors. Second, even if the plaintiff had made such an argument, it would be unavailing because the ALJ made it clear that she relied on Drs. Weinberg's and Trumbull's opinions in assessing the plaintiff's RFC for the period between June 6, 2015, and September 21, 2016,

7

Finally, the plaintiff contends that the ALJ "rejected" Drs. Weinberg's and Trumbull's "determination[s] that [her] symptoms could be accommodated by a three to five minute hourly break[,]" and that "[t]he ALJ's assessment that *prior to surgery*, the Plaintiff could remain on task while changing positions from sitting to standing every 20 minutes for up to five minutes, but that *after surgery* that same number and length of breaks would cause the Plaintiff to be off-task was based on" an impermissible interpretation of raw medical data. Statement of Errors at 15-16. This argument is unavailing for two reasons.

First, as discussed above, the RFC that the ALJ assessed for the period between June 6, 2015, and September 21, 2016, largely tracks Drs. Weinberg's and Trumbull's opinions, and the ALJ made clear that she relied on their opinions in formulating the RFC. *See* Record at 20. Although the ALJ deviated from Drs. Weinberg's and Trumbull's opinions in finding that the plaintiff would need to switch positions every 20 minutes while remaining on task, the ALJ appears to have done so by permissibly crediting the plaintiff's testimony about her need to alternate positions frequently. *See id.* at 17; *Tyler H. v. Saul*, No. 1:19-cv-00005-GZS, 2019 WL 2648446, at *5 (D. Me. June 27, 2019) (rec. dec., *aff'd* July 15, 2019) ("To the extent the ALJ's RFC gave [the claimant] the benefit of the doubt as to his report as to his limitations and included restrictions more favorable to [the claimant] than [assessed by] some or all [of] the experts based in part on [the claimant's] testimony, the ALJ's RFC finding was not error."). Moreover, the ALJ's deviation was in the plaintiff's favor. *See, e.g.*, *Jeremy J. S. v. Berryhill*, No. 1:18-cv-00192-LEW, 2019 WL 2005795, at *5 (D. Me. May 7, 2019) (rec. dec., *aff'd* June 19, 2019) (A claimant "is not entitled to remand when the ALJ accepts the State agency opinions and goes even further by

---

thereby indicating that, in her view, the later-submitted evidence did not undermine their opinions for the timeframe at issue in this appeal. *See* Record at 20.

imposing greater limitations in the RFC assessment." (alteration, citation, and internal quotation marks omitted)).

Second, the ALJ's further deviation from the Weinberg and Trumbull opinions for the period after the plaintiff had surgery on September 22, 2016, also appears to have been based primarily on the ALJ's crediting of the plaintiff's statements concerning the intensity and persistence of her pain symptoms.  *See* Record at 21 ("The intensity and persistence of the [plaintiff]'s pain symptoms, subsequent to her surgeries, support the notion that she would be unable to remain on task during a normal workday and workweek because of her need to leave her workstation to alleviate her symptoms.").  Nevertheless, even if the ALJ did improperly interpret raw medical evidence when formulating the post-surgery RFC, any error was plainly harmless because she found the plaintiff disabled during that period.  And any such error would not otherwise undermine the ALJ's reliance on the opinions of Drs. Weinberg and Trumbull for the period at issue.

For these reasons, the plaintiff has failed to demonstrate that the ALJ erred in relying on the opinions of Drs. Weinberg and Trumbull in assessing her RFC for the period between June 6, 2015, and September 21, 2016.  Because the ALJ's RFC assessment for that period is largely consistent with Drs. Weinberg's and Trumbull's opinions and only deviates in a manner that is favorable to the plaintiff, it is supported by substantial evidence.

### B.  The Plaintiff's Other Criticisms of the ALJ's RFC Determination

The plaintiff takes issue with the ALJ's decision to use the plaintiff's first surgery as a delineating point, which she contends was premised on the mistaken finding that "there was some sudden worsening in September 2016[,]" when, in fact, she had long experienced symptoms of, and sought treatment for, her back pain.  Statement of Errors at 7-8.  Contrary to the plaintiff's

argument, however, the ALJ acknowledged that the plaintiff had "reported a long history of experiencing lower back pain dating back to 2001[,]" and provided a thorough discussion of the plaintiff's symptoms and treatment history leading up to her first surgery on September 22, 2016. Record at 17-20.  The ALJ did not find the plaintiff's subjective complaints fully supported by the record prior to her first surgery, a finding that is amply supported by the opinions of Drs. Weinberg and Trumbull.  *See id.* at 18, 81, 105.  That the record could arguably support a different conclusion does not entitle the plaintiff to remand; it is for the ALJ, not the court, to draw conclusions from the evidence and to resolve any conflicts therein.  *See, e.g.*, *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769-70 (1st Cir. 1991).

The plaintiff also contends that the ALJ erred in finding that her decision to undergo back surgery in September 2016 was the point at which she "opted for aggressive treatment." Record at 19; *see* Statement of Errors at 13.  She contends that she "was engaged in very aggressive treatment, including a multitude of steroid injections," during the period between June 6, 2015, and September 21, 2016.  Statement of Errors at 13.  As discussed above, the ALJ was aware of and discussed those treatments; her use of the word "aggressive" to describe the plaintiff's surgery is consistent with treatment notes describing the plaintiff's nonsurgical procedures as conservative. *See, e.g.*, Record at 464 (describing the plaintiff's nonsurgical treatments as "conservative measures").  In fact, the plaintiff herself describes the treatments prior to her first surgery as "conservative." Statement of Errors at 8.

The plaintiff next takes issue with the ALJ's finding that she was able to care for her young grandchildren "successfully and without support" during the relevant period. Record at 19; *see* Statement of Errors at 13-14.  She points to her own testimony "that the only reason she was able to take care of the children was the help she received from her" relatives and contends that "the

record reflects that this activity exacerbated [her] symptoms and pain." Statement of Errors at 13-14 (citations omitted). Contrary to the plaintiff's argument, the ALJ's finding that she was able to care for her grandchildren without assistance is supported by the record evidence, which indicates that the plaintiff at one point reported having "sole custody of her grandchildren," which involved "frequent lifting[.]" Record at 565-66. Moreover, the ALJ specifically found that the plaintiff's condition "worsened while taking care of her young grandchildren[.]" *Id.* at 19.

Finally, throughout her brief, the plaintiff cites to medical evidence that she contends supports an earlier finding of disability. *See generally* Statement of Errors. To agree with her interpretation of that evidence, however, would require this court "to engage in precisely the interpretation of raw medical data . . . that the [claimant] correctly argues, in the same document, is forbidden by Social Security law." *Simpson v. Astrue*, Civil No. 09-399-P-H, 2010 WL 2595165, at *4 (D. Me. June 23, 2010) (rec. dec., *aff'd* July 22, 2010); *see also LaBonte v. Astrue*, Civil No. 09-358-P-S, 2010 WL 2024895, at *2 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 17, 2010) ("[The claimant] appears to expect the court to do what [she] would argue, presumably, that the [ALJ] may not do – draw a conclusion based on raw medical evidence.").

Accordingly, the plaintiff has not demonstrated that she is entitled to remand on any of these points of error.

### C. Reliance on VE Testimony

The plaintiff lastly argues that the ALJ erred in relying on the testimony of the VE because she posed questions to the VE predicated on her flawed RFC determination. *See* Statement of Errors at 16 . The success of this argument hinges on that of the plaintiff's earlier arguments that the ALJ erred in determining her RFC for the period between June 6, 2015, and September 21, 2016. Because, for the reasons discussed above, the plaintiff's challenges to the ALJ's RFC

finding for that period fall short, this derivative argument likewise fails. *See, e.g.*, *Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *4-5 (D. Me. Mar. 28, 2019).

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of December, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge